PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEJANDRO HERNANDEZ, | ) | |
| | ) | CASE NO.  4:12CV0923 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHAEL PUGH, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro se* Plaintiff Alejandro Hernandez filed this *Bivens*[1] action against Defendants

Corrections Corporation of America ("CCA"), Northeast Ohio Correctional Center ("NEOCC"),

and NEOCC Warden Michael Pugh.  In his Complaint (ECF No. 1), Plaintiff alleges a variety of

constitutional claims, including equal protection, conditions of confinement, excessive force,

retaliation, and due process.   He also alleges a claim under the Alien Tort Claims Act, 28 U.S.C.

§ 1350.  Plaintiff seeks monetary relief.

## I.  Background

The Complaint (ECF No. 1) is very disjointed and difficult to understand.  It appears

Plaintiff is a federal inmate incarcerated at NEOCC, a prison owned and operated by CCA.  ECF

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
388 (1971).  While Plaintiff cites 42 U.S.C. § 1983, that section is inapplicable, as there
is no allegation of action under color of state law.  Plaintiff is a federal prisoner in the
custody of the Bureau of Prisons ("BOP").  *Bivens* provides federal inmates and detainees
with a cause of action analogous to § 1983.

(4:12 CV 0923)

No. 1 at 2.  He does not provide any coherent set of facts but, rather, lists a series of claims

regarding his alleged treatment at the NEOCC facility.

Plaintiff argues the prison was locked down "only for rumor." ECF No. 1 at 4.  He

claims Defendant Pugh and an entity he describes as "'CO' partnership" repeatedly told him that

"foreign or criminal Alien[s]" have no rights in a private prison.  ECF No. 1 at 4, 6.  He

maintains "the commissary price is very higher not control price" and fraudulent.  ECF No. 1 at

5, 7.  He states that all food served at NEOCC is of poor nutritional quality.  ECF No. 1 at 7.

Plaintiff also states that "Federal inmates taxpayer seriously violation U.S. Constitution."  ECF

No. 1 at 5.  He claims generally he has been subjected to "racial discrimination and racial

segregation by prison authorities."  ECF No. 1 at 6.  He asserts he has the right to petition CCA

and NEOCC for redress of his grievances.  ECF No. 1 at 6.

Plaintiff claims generally his due process and equal protection rights have been violated.

ECF No. 1 at 5.  He states prison authorities retaliated against him for exercising his rights under

the Constitution.  ECF No. 1 at 4.  He asserts violations of the First, Fifth, Eighth, Thirteenth,

Fourteenth, and Fifteenth Amendments.  ECF No. 1 at 4-6.  Finally, he asserts a claim under the

Alien Tort Claims Act, 28 U.S.C. § 1350, against Defendant Pugh and the "CO" Partnership for

"violation of the law of the Nations or a treaty of the United States."  ECF No. 1 at 5.

Attached to Plaintiff's Complaint (ECF No. 1) is a document entitled "'Notice *Pro Se*'

Invoke 42 U.S.C.S. § 1983 Emergency Motion."  ECF No. 1-1.  In this Notice, Plaintiff restates

the claims set forth above and also alleges several additional claims.  He claims summarily that

Defendant Pugh used excessive force on Plaintiff.  ECF No. 1-1 at 1.  He asserts Defendant Pugh

2

(4:12 CV 0923)

and the "CO" Partnership retaliated against him for filing a civil rights lawsuit by denying him

access to the law library.  ECF No. 1-1 at 1-2.  He further claims "MR. Pugh-warden defendant

and 'CO' partnership they said in quantum language whether the inmate need the prison open

need to fine pays via commissary buying, that happen in March 21, 2012."  ECF No. 1-1 at 2.

With regard to his claims of alleged federal taxpayer violations, Plaintiff states as follows:

> The plaintiff claimant that, MR. Pugh warden violated Federal code and still same
> violation, not Federal inmate can't taxpayer for use phone, the prevailing party in
> tax proceeding, other than the United States or any creditor of taxpayer involved
> may recoup reasonable litigation costs, including attorney's fee.  Cash-basis
> taxpayer could not possible owe taxe[s] on income never received.

ECF No. 1-1 at 2.  Plaintiff claims Defendant Pugh denied him the right to ask for gymnasium

equipment on the grounds that Plaintiff is a "criminal alien."  ECF No. 1-1 at 2.  He also appears

to assert that Defendant Pugh required Plaintiff to pay higher prices in the commissary due to his

status as an alien.  ECF No. 1-1 at 2.[2]  Plaintiff seeks compensatory damages in the amount of

$10,000 against each defendant.  ECF No. 1 at 6.

Plaintiff did not submit the $350.00 filing fee when he filed his complaint, nor did he

apply for *in forma pauperis* status.  Accordingly, on April 25, 2012, the Court ordered Plaintiff to

either pay the full fee of $350 or complete and submit a financial application within 30 days of

---

[2]  This attachment to the Complaint is signed by Plaintiff and two other inmates,
Messrs. Gerome Gordon and Ventura Reyes Jose.  ECF No. 1-1 at 3.  The Court does not
consider these additional inmates to be Plaintiffs in the instant action.  The Complaint
identifies only Mr. Hernandez as a Plaintiff in the caption and the signature line.  ECF
No. 1 at 1, 7.  Moreover, the docket reflects that only Mr. Hernandez submitted a Motion
to Proceed *In Forma Pauperis* in this matter.  ECF No. 3.  Accordingly, the Court
considers Mr. Hernandez to be the sole Plaintiff in the case at bar.

(4:12 CV 0923)

the date of the Order (ECF No. 2).  On May 14, 2012, Plaintiff submitted a financial application

and prisoner account statement per the Court's Order.  ECF No. 3.

Subsequently, on June 8, 2012, Plaintiff filed a "Petition for Writ Habeas Corpus

Pursuant to Rule 4 and Local Civil Rule 4.2," which was docketed as a Motion for Relief

Pursuant to Rule 4 and Local Civil Rule 4.2.  ECF No. 4.  The purpose of this motion is unclear.

Plaintiff appears to ask the Court to allow him to proceed without pre-paying the full $350 filing

fee.  He also attempts to assert a claim for punitive damages against Defendants under the

Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a

claim upon which relief can be granted or if it lacks an arguable basis in law or fact.[3] *Neitzke v.*

*Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or

fact when it is premised on an indisputably meritless legal theory or when the factual contentions

are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which

---

[3] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

(4:12 CV 0923)

relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555.  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*  In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff and accept all allegations as true. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).

### III.  Law and Analysis

**A.**      **Proper Parties and Claims**

Defendants CCA and NEOCC are not proper parties to this action.  CCA, which owns and operates NEOCC, is a private corporation under contract with the BOP.  The Supreme Court has expressly held that a private corporation cannot be sued for damages under *Bivens*.  *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70-74 (2001).  *Bivens* provides a remedy solely against individual officers and therefore cannot be brought against a federal prison, or the BOP which controls its operation. *Id.* at 70.  In *Malesko*, the Supreme Court declined to expand *Bivens* to provide this cause of action against a private prison corporation.  Thus, Plaintiff's

5

(4:12 CV 0923)

claims against CCA and NEOCC fail to state claims upon which relief may be granted and are,

therefore, dismissed pursuant to § 1915(e).

It is unclear from the Complaint (ECF No. 1) whether Plaintiff is asserting claims against

Defendant Pugh in his individual capacity, official capacity, or both.  To the extent Plaintiff is

asserting claims against Defendant Pugh in his official capacity, such claims must be dismissed

as well.  Plaintiff's official capacity claims are necessarily construed as claims against NEOCC

and, thus, CCA.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) ("official-

capacity suits generally represent only another way of pleading an action against an entity of

which an officer is an agent"); *Dotson v. Wilkinson*, 477 F.Supp.2d 838, 851-52 (N.D. Ohio

2007).  Because claims against CCA and NEOCC are barred, any potential claims against

Defendant Pugh in his official capacity as agent of NEOCC (and, thus, CCA) are also subject to

summary dismissal under § 1915(e).

**B.**    **Alien Tort Statute, 28 U.S.C. § 1350**

Plaintiff claims that, under 28 U.S.C. § 1350, "the district court shall have original

jurisdiction of any civil action by an alien for a tort only, when MR. Michael Pugh and 'CO'

partnership they committed in violation of the law of the Nations or a treaty of the United

States."  ECF No. 1 at 5.  The Complaint (ECF No. 1) does not contain any further detail or

information regarding the basis for this claim.

The Alien Tort Claims Act, more commonly known as the Alien Tort Statute ("ATS"),

was passed by the First Congress in 1789.  *See* Judiciary Act of 1789, ch. 20, § 9(b), 1 Stat. 73,

76-77 (codified, as amended, at 28 U.S.C. § 1350).  In its current form, the ATS provides in its

(4:12 CV 0923)

entirety:  "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.

In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court set forth a framework for determining whether a cause of action falls within the purview of the ATS.  After conducting a lengthy historical review, the Court found that at the time the ATS was enacted only three actions were generally recognized as infractions of the law of nations:  piracy, offenses against ambassadors, and violations of safe conduct.  *Id.* at 724.  In addition to these traditional law of nations violations, other causes of actions based upon present-day law of nations may be cognizable under the ATS if the claim both "rest[s] on a norm of international character accepted by the civilized world and [is] defined with a specificity comparable to the features of the [aforementioned] 18th-century paradigms."  *Id.* at 725.

The Supreme Court cautioned, however, that "judicial power [pursuant to the ATS] should be exercised on the understanding that the door is still ajar subject to vigilant doorkeeping, and thus open to a narrow class of international norms today."  *Id.* at 729.  Or, as the Sixth Circuit has explained, while "[t]he ATS holds great potential to bring justice to certain serious violations of human, civil, and environmental rights in a federal forum [, that statute,] by no means, supplies jurisdiction over every wrong committed against an alien."  *Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007).

In the instant case, Plaintiff does not provide any information about either the factual or legal basis for his ATS claim.  He does not identify a "treaty of the United States" with any

7

(4:12 CV 0923)

potential application to the instant case.  In addition, while he states generally that Defendant

Pugh violated the law of nations, Plaintiff does not explain the basis for this assertion.  As set

forth above, the three original laws of nations identified in the 18th century were piracy, offenses

against ambassadors, and violations of safe conduct.  *Sosa*, 542 U.S. at 724.  There are no

allegations in the Complaint (ECF No. 1) suggesting a violation of any of these original laws of

nations.  Specifically, there is no indication of an act of robbery or depradation committed upon

the high seas, which is a fundamental element of the offense of piracy.  *Taveras*, 477 F.3d at 772

n 2.  Furthermore, there are no allegations of any kind regarding any potential offenses against an

ambassador.  Finally, with regard to the violation of safe conduct, the Sixth Circuit has explained

that "a violation of safe conduct occurs when an alien's privilege to pass safely within and

through the host nation is infringed and the alien consequently suffers injury to their 'person or

property.'" *Id.* at 773 (quoting 4 William Blackstone, *Commentaries on the Laws of England*, at

68-69 (1769)).  Even liberally construed, there are no allegations in the Complaint (ECF No. 1)

suggesting Defendant Pugh violated Plaintiff's right to safe conduct under the law of nations.

It is possible Plaintiff is attempting to argue another cause of action based upon "present-

day law of nations," as suggested in *Sosa*.  542 U.S. at 725.  If that is the case, however, Plaintiff

has failed to sufficiently plead either the factual or legal basis for such a claim.  Although

pleadings filed by a *pro se* litigant are held to less stringent standards than formal pleadings

drafted by lawyers, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

(4:12 CV 0923)

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.*  As the Supreme Court further explained in *Iqbal*, "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at
678 (quoting *Twombly*, 550 U.S. at 555).  It is not sufficient to plead "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory statements."  *Id.*  Indeed, "[w]hile
legal conclusions can provide the framework of a complaint, they must be supported by factual
allegations."  *Id.* at 679.

Pursuant to *Iqbal*, the Court finds the Complaint (ECF No. 1) in the case at bar fails to
contain sufficient factual matter to "state a claim for relief that is plausible on its face" under the
ATS.  While Plaintiff alleges generally that Defendant violated the law of nations or a treaty of
the United States, he does not plead any facts to support his allegations.  Even under the less
stringent pleading standards afforded *pro se* litigants, the Complaint (ECF No. 1) herein is
wholly insufficient.

Accordingly, the Court finds Plaintiff has failed to state a claim for relief under the ATS
as a matter of law.  Plaintiff's claim is, therefore, subject to summary dismissal under § 1915(e).

**C.**   ***Bivens* Claims**

Plaintiff's remaining individual capacity claims against Defendant Pugh arise under
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  In
*Bivens*, the Supreme Court created a private right of action for damages against federal officers
who are alleged to have violated a citizen's constitutional rights.  *Id.* at 397.  *See also Malesko*,
534 U.S. at 66.  Under *Bivens*, a plaintiff must plead and prove two essential elements.  First, he

9

(4:12 CV 0923)

must show that he has been deprived of rights secured by the Constitution or the laws of the United States. Second, he must demonstrate that defendants acted under color of federal law. *Bivens*, 403 U.S. at 397.

The Supreme Court, however, declined to extend *Bivens* to employees of a private prison (such as Defendant Pugh herein) under certain circumstances. In *Minneci v. Pollard*, 132 S.Ct. 617, 623 (2012), the Supreme Court recently held a federal prisoner could not assert a *Bivens* claim for deliberate indifference to serious medical needs under the Eighth Amendment because California state tort law provided an alternative existing process capable of protecting the constitutional interests at stake. In so holding, the Court noted it had "found specific authority indicating that state law imposes general tort duties of reasonable care (including medical care) on prison employees in every one of the eight States where privately managed secure federal facilities are currently located," including Ohio. *Id.* at 624-25. *See e.g. Clemets v. Heston*, 20 Ohio App.3d 132, 135-36 (1985). Accordingly, the Court stated that "where, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law." *Minneci*, 132 S.Ct. at 626.

While *Minneci* clearly bars Eighth Amendment claims against individual employees of a private prison for deliberate indifference to serious medical needs, it remains unclear whether other constitutional claims, such as those asserted by Plaintiff herein, are of the type which fall

10

(4:12 CV 0923)

within the scope of traditional tort law.  *Id.* at 626 ("[W]e can decide whether to imply a *Bivens*

action in a case where an Eighth Amendment claim or state law differs significantly from those at

issue here when and if such a case arises.  The possibility of such a different future case does not

provide sufficient grounds for reaching a different conclusion here.").  The Court need not reach

this issue, however, as Plaintiff's constitutional claims clearly fail to state claims upon which

relief may be granted and are, therefore, dismissed pursuant to § 1915(e).

1.    **Equal Protection Claims**

The Complaint is unclear but it appears Plaintiff contends he was charged higher

commissary prices, given poor quality food, and denied access to gymnasium equipment on the

basis of his race.  ECF No. 1 at 5-6, 7; ECF No. 1-1 at 2.  He further alleges, generally, that

Defendant Pugh engaged in racial discrimination and racial segregation under the Equal

Protection Clause of the Fourteenth Amendment.  ECF No. 1 at 5-6.

As Plaintiff is challenging the actions of officials acting under color of federal law, rather

than state actors, this Court's equal protection analysis must proceed under the Fifth Amendment.

The Fifth Amendment does not itself contain a guarantee of equal protection but instead

incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth

Amendment.  *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011).  As the Sixth Circuit recently noted, "[w]e evaluate equal protection claims against the

federal government under the Fifth Amendment just as we would evaluate equal protection

claims against state and local governments under the Fourteenth Amendment."  *Id.*

11

(4:12 CV 0923)

The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1.  To state an equal protection claim, a plaintiff must adequately plead that the defendant treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc.*, 648 F.3d at 379.  *See also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.  *Id.*  *See also Center for Bio-Ethical Reform, Inc.*, 648 F.3d at 379.

The Court finds Plaintiff has failed to adequately plead disparate treatment.  Plaintiff claims "the commissary price is very higher not control price" and that this is a "serious violation need to go via jury trial, it reason in the racial discrimination and racial segregation by prison authorities are unconstitutional under Equal protection clause of the fourteenth Amendment."  ECF No. 1 at 5-6.  Plaintiff also alleges in the "Notice" (ECF No. 1-1) attached to his Complaint that:

> 7.  The plaintiff claimant whether MR. Michael Pugh defendant warden said is this private prison, and, not criminal alien have in this place any right to ask for Item or Equip gymnasium, whether inmate not pays for that, defendant warden says is this reason daring commissary, I did put price higher for the inmate paying by item or equip of the gymnasium that warden said not question.

12

(4:12 CV 0923)

> 8.  The plaintiff claimant whether defendant warden on put commissary price higher, the extreme inferior nutritional quality and inadequate quantity of the food being served here at "CCA"NEOCC" and racial discrimination and racial segregation by prison authorities are unconstitutional under the equal protection clause of the fourteenth Amendment.

ECF No. 1-2 at 2.  It is very difficult to understand the precise nature of Plaintiff's allegations. Even liberally construed, however, the Complaint (ECF No. 1) does not assert that similarly-situated, non-Hispanic inmates are either (1) permitted to purchase commissary items at a lower price than Plaintiff, (2) given access to gymnasium equipment that Plaintiff is not permitted to use, or (3) provided better quality food than Plaintiff.  In the absence of such allegations, the Court finds Plaintiff has failed to adequately plead claims for relief under the Equal Protection Clause.  Accordingly, Plaintiff's equal protection claims against Defendant Pugh in his individual capacity are dismissed pursuant to § 1915(e).

**2.  Eighth Amendment Claims**

Plaintiff alleges Defendant Pugh violated his constitutional rights by (1) providing food that was inadequate both in quantity and nutritional quality; (2) making discriminatory remarks to him; and (3) using excessive force.  ECF No. 1 at 4-7; ECF No. 1-1 at 1.  Although Plaintiff does not cite a constitutional basis for these claims, the Court will liberally construe them as arising under the Eighth Amendment.[4]

---

[4]  While the Supreme Court held in *Minneci*, *supra* that *Bivens* did not extend to Eighth Amendment claims for denial of medical care, Plaintiff's Eighth Amendment claims herein are conditions of confinement and excessive force claims.  It is unclear whether a *Bivens* action should be implied for the specific Eighth Amendment claims at issue in the case at bar.  The Court, however, finds it need not decide this issue at this time as Plaintiff's conditions of confinement and excessive force claims are without merit

(continued...)

13

(4:12 CV 0923)

### a.        Quality and Quantity of Prison Food

Plaintiff alleges the quality of the food served at NEOCC is "very poor" and lacking in nutritional value.  ECF No. 1 at 5, 7.  He also asserts he is being served an "inadequate quantity" of food.  ECF No. 1-1 at 2.  The Court construes these allegations as raising a conditions of confinement claim.

The Eighth Amendment requires that convicted prisoners be provided  "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Life's necessities include shelter, sanitation, food, personal safety, medical care, and clothing.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  Rather, a prisoner must plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  Only extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  *Id.* at 9.

A prisoner must also establish a subjective element showing the prison official acted with a sufficiently culpable state of mind.  *Id.*  An official acts with deliberate indifference when he acts with criminal recklessness, a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm.  *Farmer, 511 U.S. at 837*.  Mere negligence will

---

[4](...continued)
for the reasons discussed *infra*.

14

(4:12 CV 0923)

not suffice. *Id.* at 835-36. *See also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that deliberate indifference is characterized by obduracy or wantonness, not inadvertence of good faith error). A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer,* 511 U.S. at 834.

It is well-settled that prisoners have a right to adequate food. See *id.* at 832. "However, there is no constitutional right that the food provided must be tasty or even appetizing." *Moody v. Bell*, No. 1:08cv796, 2009 WL 3011505, at * 4 (S.D. Ohio June 26, 2009). *See also LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (noting that prison food "need not be tasty or aesthetically pleasing"); *Allen v. Aramark Corp.*, No. 3:07CV-P260-M, 2007 WL 3120088, at * 5 (W.D. Ky. Oct. 23, 2007). Indeed, the Sixth Circuit has held that, while a prisoner is constitutionally entitled to food that is nutritionally adequate for the maintenance of normal health, complaints about "the preparation or quality of prison food" are generally "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). *See also Stapleton v. Wilson*, No. 07-CV-218-KSF, 2007 WL 3120121, at * 6 (E.D. Ky. Oct. 23, 2007) (noting that "[t]he law is not favorable to inmates who complain about the quality of the food served to them"). Rather, the Eighth Amendment is implicated only when the food provided to a prisoner is insufficient to maintain normal health. *See Cain v. MDOC*, No. 1:07–cv–543, 2008 WL 8224197, at * 27 (W.D. Mich. March 31, 2008) (citing *Pratt v. Corrections Corp. of Am.*, 267 Fed.Appx. 482, 483 (8th Cir. 2008)).

In the case at bar, Plaintiff alleges generally that the food served at NEOCC is of "inferior nutritional quality" and of "inadequate quantity." ECF No. 1-1 at 2. The Court finds these

(4:12 CV 0923)

allegations are insufficient to satisfy either the objective or subjective components of the Eighth

Amendment standard.  While Plaintiff alleges generally that the food is lacking in nutritional

value, he does not describe the food that is served at NEOCC, explain in what manner he

believes it is lacking in nutritional content, or allege that it is insufficient to sustain normal

health.  Similarly, Plaintiff fails to provide any factual allegations to support his generalized

assertion that the quantity of food provided is inadequate.  He provides no information regarding

the quantity of food that is served, nor does he explain how the quantity of food served at

NEOCC fails to sustain normal health.  Moreover, Plaintiff does not allege he has suffered any

physical or medical problems as a result of the food provided to him at the NEOCC facility.  In

the absence of such allegations, the Court finds the Complaint (ECF No. 1) is insufficient to

demonstrate that a sufficiently serious deprivation has occurred with respect to the quality and

quantity of the food provided at NEOCC.

The Court further finds Plaintiff has failed to allege sufficient factual content to suggest

Defendant Pugh acted with "deliberate indifference" to his health or safety with regard to this

issue.  The Complaint (ECF No. 1) contains no allegations suggesting that Defendant Pugh was

aware of the alleged failings in the food provided to Plaintiff or consciously disregarded a

substantial risk of serious harm to Plaintiff's health and well-being.

16

(4:12 CV 0923)

In light of the above, the Court finds Plaintiff has failed to state an Eighth Amendment claim based on the allegedly poor quality and quantity of food provided at the NEOCC facility. Accordingly, this claim is dismissed pursuant to § 1915(e).[5]

### b.    Allegedly Discriminatory Statements by Defendant Pugh

Plaintiff alleges Defendant Pugh repeatedly informed him that "foreign or criminal Alien[s]" have no rights in a private prison.  ECF No. 1 at 4, 6.  Specifically, Plaintiff asserts that "whether inmates hearing many, many time not criminal Alien have any constitution rights in private prison, it inmates(s) feeling heart pain ' and' mental or emotional ' injury is claim for their constitution violation."  ECF No. 1 at 6.  The Court construes these allegations as raising a claim of cruel and unusual punishment.

The Sixth Circuit has held that verbal abuse and harassment of a prisoner by a prison official does not constitute the type of infliction of pain that the Eighth Amendment prohibits. See *Ivey,* 832 F.2d at 954; *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 Fed.Appx. 24, 27 (6th Cir. 2003); *Johnson v. Moore,* 7 Fed.Appx. 382, 384 (6th

---

[5]  To the extent Plaintiff may be asserting an Eighth Amendment violation based on his allegations of high commissary prices, the Court rejects this claim as well.  Courts have consistently held that prisoners have no constitutional right to purchase products at the same price as charged in retail stores.  *See e.g. Griffin v. Doe*, No. 1:10CV1987, 2011 WL 94563, at *1 (N.D. Ohio Jan. 11, 2011); *Simpson v. Caruso*, No. 1:09–cv–245, 2009 WL 1010973, at * 3 (W.D. Mich. April. 14, 2009); *Floyd v. Emmet County Correctional Facility*, No. 1:06-CV-283, 2006 WL 1429536, at * 4 (W.D. Mich. May 23, 2006) (prisoners have no constitutionally guaranteed right to purchase commissary items at the same or lower price than charged at regular retail stores); *McCall v. Keefe Supply Co.*, 71 Fed.Appx. 779, 780 (10th Cir. 2003) (allegation that prisoner was overcharged for goods at prison commissary failed to state a constitutional claim); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) (no legal basis exists for a demand that inmates be offered items for purchase at or near cost).

(4:12 CV 0923)

Cir. 2001) (noting that "[a]llegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment"). While the Court does not condone the statements allegedly made by Defendant Pugh, Plaintiff's allegations are insufficient to establish an Eighth Amendment violation as a matter of law. Accordingly, the Court finds Plaintiff's Eighth Amendment claim based on Defendant Pugh's allegedly discriminatory remarks fails to state a claim upon which relief can be granted and is dismissed pursuant to § 1915(e).

### c.    Excessive Force

Plaintiff summarily claims that Defendant Pugh's "use of excessive force violated plaintiff's right, and constituted cruel and unusual punishment under Eighth Amendment." ECF No. 1-1 at 1. Plaintiff does not, however, provide any further allegations regarding this claim.

The standard used to analyze excessive force claims under the Eighth Amendment requires the Court to determine whether the officers acted in a good faith effort to maintain or restore discipline, or whether they acted maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 8. *See also Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). That is not to suggest that every angry touch by a prison guard gives rise to a federal cause of action. Prison officials may often be required to use physical contact to insure prison security. *Hudson*. 503 U.S. at 9. The physical contact will rise to the level of an Eighth Amendment violation only if the contact represents an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In determining whether the use of force was wanton and unnecessary, the extent of injury suffered by an inmate is one factor that may considered, along with other factors including

18

(4:12 CV 0923)

"the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).  Generally, if the force applied is grossly disproportionate to the offense committed by the prisoner, a plaintiff states a cause of action for use of excessive force.  *Rhodes*, 452 U.S. at 345.

The Court finds Plaintiff has failed to set forth sufficient factual allegations that Defendant Pugh's alleged use of excessive force was objectively unreasonable.  The Complaint (ECF No. 1) does not set forth any allegations regarding the force that was allegedly used by Defendant Pugh or the circumstances surrounding the alleged use of force.  Plaintiff also fails to allege that he suffered any physical injury or medical problem as a result of the alleged use of force.  While the Complaint (ECF No. 1) alleges generally that Defendant Pugh used excessive force, it simply does not provide sufficient factual allegations to raise the right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.  To meet the pleading requirement of Fed. R. Civ. P. 8, Plaintiff must include more than labels, legal conclusions, or formulaic recitations of the elements of a claim.  *Id.*  Plaintiff herein fails to do so.  Even liberally construed, the Complaint (ECF No. 1) is insufficient to suggest that Defendant Pugh's alleged use of excessive force constituted cruel and unusual punishment.  Accordingly, Plaintiff's Eighth Amendment excessive force claim is dismissed pursuant to § 1915(e).

### 3.    Retaliation

The Complaint (ECF No. 1) is unclear, but it appears Plaintiff is asserting two retaliation claims.  First, Plaintiff appears to assert the prison was locked down in retaliation "against

(4:12 CV 0923)

inmates for Exercising his or her constitution rights." ECF No. 1 at 4.  Second, Plaintiff seems to assert that the prison law library was closed in retaliation for the filing of a civil rights lawsuit. ECF No. 1-1 at 1-2.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).  In this context, a retaliation claim has three elements:  (1) the prisoner was engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements – *i.e.* the prisoner's protected conduct motivated, at least in part, the adverse action.  *Id.* at 394.  *See also* *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

With respect to Plaintiff's claim that the prison was locked down for retaliatory reasons, the Court finds Plaintiff has failed to sufficiently allege that he was engaged in protected conduct or that a causal connection existed between such conduct and the decision to lock down the prison.  Plaintiff alleges only that the prison was locked down in retaliation for inmates exercising their constitutional rights.  ECF No. 1 at 4.  Plaintiff does not provide any further information regarding this claim.  He fails to set forth any allegations identifying the constitutional rights he was allegedly exercising, or explain how he was exercising those rights.  Moreover, Plaintiff fails to sufficiently allege that any protected conduct on his part motivated Defendant Pugh's decision to lock down the prison.  In the absence of such allegations, the Court finds the Complaint (ECF No. 1) does not provide sufficient factual content to raise the right to

20

(4:12 CV 0923)

relief above the speculative level.  *See Twombly*, 550 U.S. at 555.  As set forth *supra*, to meet the

pleading requirement of Fed. R. Civ. P. 8, Plaintiff must include more than labels, legal

conclusions, or formulaic recitations of the elements of a claim.  *Id.*  Even liberally construed, the

Complaint (ECF No. 1) contains insufficient factual allegations to suggest that Defendant Pugh

locked down the prison in retaliation for Plaintiff's exercise of  his constitutional rights.

The Court also dismisses Plaintiff's claim that Defendant Pugh retaliated against him for

filing a civil rights lawsuit by closing the law library.  The only allegations regarding this claim

are as follows:  "The plaintiff claimant that after open normal, but law library was closed and the

inmate stated claim that defendant warden 'CO' partnership were retaliate against for filing civil

rights lawsuit, on allegation that they denied access to law library."  ECF No. 1-1 at 1-2.

Plaintiff does not provide any further information or factual allegations regarding this claim.

While it would be possible for the Court to piece together a potential retaliation claim from

certain sentence fragments in the Complaint (ECF No. 1), it would have to engage in a number of

factual assumptions to do so.  The Court would first have to assume that it was, in fact, Plaintiff

who engaged in the protected conduct, *i.e.* filed the civil rights lawsuit mentioned in the

Complaint (ECF No. 1).  The Court would then have to assume that Defendant Pugh was

responsible for the decision to close the law library, as the Complaint (ECF No. 1) does not

address this issue.  From there, the Court would have to assume that the decision to close the law

library was, in fact, motivated by the filing of the unidentified civil rights lawsuit.  While *pro se*

complaints are liberally construed, there are limits to the extent to which this Court can

(4:12 CV 0923)

reasonably interpret and construe a *pro se* filing.  The Court cannot read factual allegations into a complaint that simply aren't there.

In the instant case, the Complaint (ECF No. 1) fails to contain allegations clearly indicating that Plaintiff engaged in protected conduct or that Defendant Pugh was motivated by this conduct to take adverse action against him.  In the absence of such allegations, the Court finds the Complaint (ECF No. 1) fails to set forth sufficient factual matter to plead a retaliation claim under the First Amendment.  Accordingly, Plaintiff's retaliation claims are dismissed pursuant to § 1915(e).

### 4.  Due Process

Plaintiff appears to assert that his due process rights were violated when the NEOCC facility was locked down "only for rumor."   ECF No. 1 at 4; ECF No. 1-1 at 1.  The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law."  U.S. Const. Amend. V.  In addition to setting the procedural minimum for deprivations of life, liberty or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit.  *Id.*

The Due Process Clause has a procedural component and a substantive one.  It appears from the nature of his allegations that Plaintiff is alleging a violation of his procedural due process rights.  To establish a procedural due process violation, a plaintiff must show that a

22

(4:12 CV 0923)

liberty or property interest is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Thus,

procedural due process analysis involves two steps:  "[T]he first asks whether there exists a

liberty or property interest which has been interfered with by the State; the second examines

whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky.*

*Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).  In other words, "the

question of what process is due is relevant only if the inmate establishes a constitutionally

protected interest."  *Pickelhaupt v. Jackson*, 364 Fed.Appx. 221, 224 (6th Cir. 2010).

The Court finds Plaintiff has failed to plead sufficient factual content to support his claim

that his procedural due process rights were violated when the prison was locked down "only for

rumor."   Plaintiff does not explain any of the circumstances surrounding the lock down of the

prison.  He provides no factual allegations regarding the reason for or duration of the lock down,

nor does he explain the nature of the "rumor" that allegedly caused the lock down in the first

instance.  Under *Twombly* and *Iqbal*, *supra*, a plaintiff is not required to prove his claim in the

Complaint, but he must plead more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Iqbal*, 556 U.S. at 678.  A complaint's "[f]actual allegations must be enough to

raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although a

plaintiff need not plead detailed facts, the complaint must "give the defendant fair notice of what

the claim is and the grounds upon which it rests."  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th

Cir. 2008).  Plaintiff herein fails to do so.  Accordingly, Plaintiff's procedural due process claim

based on the prison lock down fails to state a claim and is subject to dismissal pursuant to §

1915(e).

(4:12 CV 0923)

**5.      Violation of Federal Code With Respect to Plaintiff's Use of the Telephone**

Plaintiff claims Defendant Pugh violated unspecified federal code provisions with respect

to his ability to use the telephone.  His allegations regarding this issue are as follows:

> The plaintiff claimant that, MR. Pugh warden violated Federal code and still same
> violation, not Federal inmate can't taxpayer for use phone, the prevailing party in
> tax proceeding, other than the United States or any creditor of taxpayer involved
> may recoup reasonable litigation costs, including attorney's fee.  Cash-basis
> taxpayer could not possible owe taxe[s] on income never received.

ECF No. 1-1 at 2.

Despite its attempts to understand and liberally construe the Complaint (ECF No. 1), the

Court cannot discern either the factual or legal basis of this claim.  As set forth *supra*, a

complaint must contain either direct or inferential allegations respecting all the material elements

of some viable legal theory to satisfy federal notice pleading requirements.  *See Schied v. Fanny

Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to

conjure up questions not squarely presented to them or to construct full blown claims from

sentence fragments.  *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985);

*Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349, at *2 (6th Cir. April 6, 2000).  To

do so would require the courts "to explore exhaustively all potential claims of a *pro se* plaintiff . .

. [and] would . . . transform the district court from its legitimate advisory role to the improper

role of an advocate seeking out the strongest arguments and most successful strategies for a

party."  *Crawford*, 2000 WL 377349, at *2 (quoting *Beaudett*, at 1278).  Moreover, a plaintiff's

failure to identify a particular legal theory in his complaint places an unfair burden on defendants

to speculate about the potential claims that a plaintiff may be raising against them and the

24

(4:12 CV 0923)

defenses they might assert in response to each of these possible causes of action.  *See Wells v.*

*Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

    In the case at bar, Plaintiff fails to identify either the factual or legal basis of this claim.

Accordingly, this claim is dismissed pursuant to § 1915(e).

**D.      Motion for Relief Pursuant to Rule 4 and Local Rule 4.2**

    Subsequent to the filing of the Complaint (ECF No. 1), Plaintiff filed a "Petition for Writ

Habeas Corpus Pursuant to Rule 4 and Local Civil Rule 4.2," which was docketed as a Motion

for Relief Pursuant to Rule 4 and Local Civil Rule 4.2.  ECF No. 4.  In his Motion, Plaintiff

states:

> Petitioner Pro Se and hereby prays and respectfully moves this Honorable Court
> for relief pursuant to Rule 4 and local civil Rule 4.2.  On grounds that the he said
> **"GOOD FAITH"** in the United States via Guantom language claim with a
> Guantom language Constitution.  The district court said the total filing fee in the
> amount of $ 350 is due, further an initial partial fee in the amount of **$5.00,**
> accordance with district court. The plaintiff cannot pay the total of $ 350 because
> he  indigent.  The plaintiff send back amount of $5.00 check as accept partial
> payments associate with filing fee, this Honorable Court should reject, or modify,
> in whole or in part, the finding the recommendation or order made by the
> magistrate judge on the grounds of 42.U.S.C.§1983.

ECF No. 4 at 1 (emphasis in original).

    As an initial matter, the Court notes that the Complaint (ECF No. 1) raises constitutional

challenges to the conditions of Plaintiff's confinement at NEOCC and seeks monetary damages

as relief.  As such, it raises civil rights claims against officials acting under color of federal law

that are properly brought pursuant to *Bivens, supra*.  While Plaintiff appears to characterize the

case at bar as a "Petition for Writ of Habeas Corpus" in his recently filed Motion for Relief (ECF

No. 4), the Complaint (ECF No. 1) does not challenge the fact or duration of his imprisonment or

25

(4:12 CV 0923)

seek as relief his release from custody.  Accordingly, the instant case is properly considered as a

civil rights matter and will not be accorded habeas review.  *See Dotson v. Wilkinson*, 329 F.3d

463, 466 (6th Cir. 2003) (noting that "[f]ederal habeas corpus pursuant to 28 U.S.C. § 2254 is the

exclusive avenue for challenging the fact or duration of a prisoner's confinement, but civil rights

actions pursuant to 42 U.S.C. § 1983 are available to challenge the conditions of that

confinement").

 As a civil rights action, this matter is subject to a $350.00 filing fee pursuant to 28 U.S.C.

§ 1914(a).  That section provides that:  "[t]he clerk of each district court shall require the parties

instituting any civil action, suit or proceeding in such court, whether by original process, removal

or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the

filing fee shall be $5."  28 U.S.C. § 1914(a).  It appears from Plaintiff's motion that he is

concerned that the Court will require him to pay the entire $350.00 filing fee before it will serve

the Complaint (ECF No. 1).

 Pursuant to 28 U.S.C. § 1915(a), a court may authorize the commencement of an action

without prepayment of fees if an applicant has shown by affidavit that he satisfies the criterion of

poverty.  Prisoners, however, become responsible for paying the entire amount of their filing fees

and costs from the moment they file a complaint.  28 U.S.C. § 1915(b); *McGore*, 114 F.3d at

604.  When an inmate seeks pauper status, the only issue for the Court to determine is whether

the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an

installment plan.  *Id.*

(4:12 CV 0923)

In the instant case, Plaintiff filed an Affidavit and Financial Application on May 14, 2012 requesting  that he be permitted to proceed without being required to pre-pay the entire filing fee. ECF No. 3.  In an Order filed contemporaneously with this Memorandum of Opinion and Order, the Court has granted Plaintiff's request for permission to proceed *in forma pauperis* and required that partial filing fees be periodically deducted from Plaintiff's prisoner account until the full fee has been paid.  Accordingly, Plaintiff's Motion for Relief pursuant to Rule 4 and Local Civil Rule 4.2 (ECF No. 4) is hereby denied as moot.[6]

### IV.  Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[7]


IT IS SO ORDERED.


 December 10, 2012                                  */s/ Benita Y. Pearson*
Date                                                          Benita Y. Pearson
                                                                 United States District Judge


_____

[6] In his motion, Plaintiff attempts to assert a claim against Defendants under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*  This claim is not raised in the Complaint (ECF No. 1) and, therefore, will not be considered by the Court.

[7] 28 U.S.C. § 1915(a)(3) provides

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

27